IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHARLES EMIL ARNOLD, III,
    Plaintiff,

vs.                                                        Case No.: 3:14cv24/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
    Defendant.
_____/

## **MEMORANDUM DECISION AND ORDER**

        This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* docs. 4, 5). It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

        Plaintiff challenges the decision of the Administrative Law Judge ("ALJ") on grounds that the ALJ, in assessing Plaintiff's residual functional capacity ("RFC"), failed to articulate good cause for discrediting the medical opinions of both of Plaintiff's treating physicians.

        Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence and application of proper legal standards; thus, the decision of the Commissioner is affirmed.

I.      PROCEDURAL HISTORY

On February 17, 2012, Plaintiff filed applications for DIB and SSI, and in each application he alleged disability beginning December 29, 2011 (Tr. 303, 307).[1] Plaintiff's applications were denied initially and then upon motion for reconsideration. Plaintiff then requested a hearing before an ALJ, and one was held on June 4, 2013. On June 25, 2013, ALJ Tracy S. Guice issued her decision denying benefits (doc. 7-2 at 13–26). Plaintiff sought review of the ALJ's decision, which the Appeals Council denied on November 18, 2013 (*id.* at 1–3). The ALJ's decision thus stands as the final decision of the Commissioner, and is properly subject to review in this court. Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1262 (11th Cir. 2007).

II.     FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (*see* tr. 15–26):

1.      The claimant meets the insured status requirements of the Act through December 31, 2016.

2.      The claimant has not engaged in substantial gainful activity since December 29, 2011, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq*., 416.971 *et seq*.).

3.      The claimant has the following severe impairments: diabetes mellitus, insulin dependent; hypertension; obesity; history of closed head injury from motor vehicle accident in 1994 (20 C.F.R. §§ 404.1520(c), 416.920(c)).

4.      The claimant has no impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

5.      The claimant has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except he can lift and carry ten pounds frequently and twenty pounds occasionally. He can sit, stand, and walk for a total of six hours each during an eight-hour workday. He can frequently use the upper and lower extremities to push and pull. He can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. He is precluded from climbing ladders, ropes, and scaffolds; he should avoid exposure to extreme heat and cold; and he is restricted from work around unprotected heights or dangerous machinery. He can continuously reach overhead, handle, finger, and feel. As to the diabetic retinopathy alleged by the claimant as blurred vision, he

---

[1] All references to "Tr." refer to the transcript of Social Security Administration record filed on March 24, 2014 (doc. 7). The page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

Case No.: 3:14cv24/EMT

is able to avoid workplace hazards such as boxes in the hallway. He can sustain concentration and attention for two-hour periods.

     6.    The claimant is capable of performing his past relevant work as a cashier, checker, waiter, and assistant manager, as generally performed and described by the Dictionary of Occupational Titles. This work does not require the performance of work-related activities precluded by the his RFC (20 C.F.R. §§ 404.1565, 416.965).

     7.    The claimant has not been under a disability, as defined in the Act, at any time during the period beginning December 29, 2011, and continuing through the date of the ALJ's decision.

## III. STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A). Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, he is not disabled.

2. If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3. If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5. Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his RFC and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.   RELEVANT HEARING TESTIMONY AND MEDICAL HISTORY

    A.   Plaintiff's Hearing Testimony

Plaintiff testified at his June 4, 2013, hearing before the ALJ as follows. Plaintiff, thirty-six years old at the time of his testimony, stated that he was employed in his latest job until December of 2011 as a stock person for Home Depot, when he was fired for missing too much work (Tr. 35–36, 40). Plaintiff stated that the underlying cause was his difficulty in adapting to his new insulin pump, which resulted in his blood sugar readings being out of control, and he was not supposed to drive when the readings were too high (Tr. 40–41).

Plaintiff provided that he is under the care of Rex DeLaune, M.D., his family doctor whom he would see approximately three times a year primarily for hypertension, as well as Vishnu N. Behari, M.D., a physician specializing in endocrinology, diabetes, and metabolism whom Plaintiff would also see about three times per year for management of his diabetes (Tr. 41, 373, 378). At the time of the hearing, Plaintiff had not had emergency treatment for his diabetes within the last two to three years, approximately (Tr. 41–42).

Plaintiff also stated that he suffered a head injury in 1994 that has since caused him to have short-term memory loss, and as a result he receives help from his father and others with his checking account and other finances (Tr. 42–43). Despite the injury, Plaintiff's past work included jobs that the vocational expert identified as semi-skilled or skilled work (Tr. 36–40, 49–50).

Plaintiff indicated that his roommate helps him with daily activities such as cooking, shopping, and cleaning the house (Tr. 43). He stated that his roommate cuts the grass but that he (Plaintiff) helps him (*id*.). In sum, Plaintiff stated that his roommate helped him with "anything that requires some activity" (*id*.). Plaintiff stated, however, that he attends to his personal needs such as bathing and dressing without assistance (*id*.). Plaintiff also stated that he is able to drive a vehicle without restrictions (Tr. 43–44). Although he does not drive on his own to the grocery store, he accompanies his roommate to the store to help shop for groceries (Tr. 44). Plaintiff said he attends medical appointments by himself, does his own laundry, makes his bed, and can prepare simple meals for himself so long as his blood sugar level is not too low (Tr. 44–45). Plaintiff states that on a typical day he "hang[s] around the house" and watches television, throws darts, or plays video games (Tr. 47).

Plaintiff stated he did not feel "in control" when away from the house because he feared his blood sugar might "bottom out" (Tr. 47). Plaintiff testified that his worst diabetes symptom was feeling incoherent, particularly upon waking in the morning (Tr. 48). He indicated that he frequently cannot finish things he starts due to weakness or fatigue, that sitting too long can cause numbness and tingling in his legs and feet, and that his vision gets blurry if his sugar level gets too high (*id*.). Plaintiff estimated that he could probably stand or walk thirty minutes before he needs to sit and that he must rest for ten to fifteen minutes every hour (Tr. 48–49).

In a Supplemental Pain Questionnaire Plaintiff completed on March 2, 2012,[2] Plaintiff stated that he has difficulty keeping his blood sugar levels under control and that this occurs approximately every three hours (Tr. 230–31). He stated he cannot "function to do" household chores if his sugar is too high or low (Tr. 231). Plaintiff provided that insulin or food will relieve the problem and when asked on the form how effective his medication was, he answered, "Great if figured correctly" (*id*.).

      B.     Relevant Medical History

Plaintiff was diagnosed with diabetes mellitus in 1997 at age 21 (Tr. 384). Although it is unclear as to when Plaintiff first sought medical help from Dr. DeLaune specifically because of his difficulties managing his diabetes, Dr. DeLaune at some point referred Plaintiff to Dr. Behari for the "benefit of an endocrinologist for his diabetes glycemic management," and Dr. Behari saw Plaintiff initially on August 8, 2007 (Tr. 272). In consultation with Dr. Behari, Plaintiff reported having lost his job because he was experiencing wide fluctuations in his blood sugar levels which were causing him to pass out (*id*.).[3] Plaintiff acknowledged that part of his ongoing problem controlling his blood sugar derived from his own negligence in being timely with his meals, and from not checking his blood sugar levels more meticulously (Tr. 272–73).

---

[2] Since pain was not a substantial issue for Plaintiff but his difficulty controlling his blood sugar was, the form was somewhat inappropriate for him, but Plaintiff answered questions on the form related to pain as if the questions related to the symptoms he would experience when his blood sugar levels deviated from the norm. This may well have been the way he was instructed to complete the form (Tr. 230–32).

[3] The record shows that Plaintiff worked at Herndon Oil Corporation in 2007 and was subsequently employed by Home Depot in 2008 (Tr. 203–04). Therefore, it is presumed that it was Plaintiff's job with Herndon Oil that was terminated in the above-described instance. The court notes this as a separate instance from Plaintiff's 2011 job termination at Home Depot.

Case No.: 3:14cv24/EMT

Plaintiff also stated that he smoked a pack and a half of cigarettes a day (Tr. 273). He provided that he usually awakens at ten o'clock in the morning and has an apple turnover for breakfast, then has a "dessert or cake or pastry" for lunch at noon, a granola bar or small fruit at 3:00 p.m., and at supper time a very large meal with meat, vegetables, and complex carbohydrates (*id*.). Plaintiff indicated that he had not had recent low blood sugars but has had them in the past (*id*.). He did not appear to Dr. Behari to be in any acute distress (Tr. 274). Plaintiff stated that "he does have a warning, such as sweating or racing of the hear [sic] prior to his blood sugar going low" (*id*.).

Dr. Behari diagnosed Plaintiff as having "most likely type 1 type of diabetes" because of his failure to respond adequately to earlier prescribed medications, Avandia and Glucophage (Tr. 274).[4] Dr. Behari switched Plaintiff to Lantus in an effort to "optimize this insulin regimen in view of his erratic life schedule right now" and in anticipation of getting him approved for a continuous subcutaneous insulin infusion pump (Tr. 274–75). It was noted that Plaintiff's diet was "far from normal," and Dr. Behari spoke to him about an exercise and weight loss program which he saw as "an important part of this overweight young man's blood sugar control" (Tr. 275). Dr. Behari also discussed diabetes education and training on the use of an insulin pump (*id*.). That Plaintiff should quit smoking was also emphasized (*id*.).

Although Plaintiff indicated he saw Dr. Behari approximately three times per year, there is little in the record to document any such visits between 2007 and 2012. There are scant medical notations during 2010 and 2011 concerning prescriptions and identifying efforts by Dr. Behari to help Plaintiff obtain monetary assistance for his Novolog insulin (Tr. 298, 304, 306, 342–44). The Novolog insulin was evidently used in conjunction with the implementation of Plaintiff's insulin pump, which he received as early as April 8, 2010 (Tr. 311).

The record documents that Plaintiff presented to the emergency room at West Florida Hospital during the day on Saturday, February 14, 2009 (Tr. 258–66). Plaintiff's blood sugar was elevated at 290, and he was not being successful in bringing the level down despite using his insulin pump and giving himself "multiple insulin boluses" (Tr. 258, 261, 264). Plaintiff explained to the nurse on duty that earlier in the day he was waiting on a new insulin vial to arrive for his insulin

---

[4] Treatment records from Dr. DeLaune and Jennifer L. Murray, M.D., indicate that, prior to Dr. Behari's assessment of type 1 diabetes, Plaintiff was diagnosed as having type 2 diabetes mellitus (Tr. 313–15).
Case No.: 3:14cv24/EMT

pump and as a result was without insulin for eight hours (Tr. 258). Plaintiff's blood sugar level reduced to 163, and he was discharged that day (Tr. 259). Staff notes indicate that Dr. Behari was informed of the situation and wanted to see Plaintiff on the following Monday (Tr. 263).

The record also contains information on a series of office visits that Plaintiff made to Dr. DeLaune. On an April 8, 2010, visit, Plaintiff's lab results were slightly low for glucose at 68, as the normal range is between 72 and 128 (Tr. 318). Dr. DeLaune described Plaintiff's diabetes as "controlled," and he recommended that Plaintiff continue with the same dosage amount (Tr. 312). On July 2, 2010, Plaintiff's glucose level was reported as "running 150's to 170's; however, at times down in the 60's" (Tr. 310). Plaintiff was evidently doing well until he contracted a respiratory illness, and his blood sugar levels improved once the illness subsided (*id*.). On a September 8, 2010 visit, Plaintiff's glucose reading was in the normal range at 101 (Tr. 319). As evidently Plaintiff reported foot difficulties, Dr. DeLaune recommended he limit tight-fitting shoes, refrain from walking barefoot, and check his feet regularly for lesions (Tr. 308). On June 6, 2011, Plaintiff's glucose reading was tested at 314 (Tr. 300, 319). As with Plaintiff's previous visits, Dr. DeLaune still marked his diabetes condition as "controlled but fasting glucose is elevated" (Tr. 301). He identified Plaintiff as having "brittle" diabetes mellitus, type 1, and noted that his home glucose ratings "range very widely" (*id*.). Plaintiff was urged to follow a diabetic diet more closely, and it was noted that Plaintiff was scheduled to see Dr. Behari soon (*id*.). On a visit to Dr. DeLaune on December 6, 2011, Plaintiff's glucose level tested normal at 116 (Tr. 340, 353). In his notes, Dr. DeLaune identified Plaintiff's diabetes as "uncontrolled" and also described it as "without mention of complication" (Tr. 340). Otherwise, Dr. DeLaune's examination revealed no changes in Plaintiff's health, and he reiterated that he would leave the management of Plaintiff's diabetes to Dr. Behari (*id*.).[5]

On January 23, 2012, Dr. Behari completed a Diabetes Mellitus RFC Questionnaire for Plaintiff (Tr. 322–25). Dr. Behari identified Plaintiff's diabetic symptoms as fatigue, excessive thirst, vascular disease/leg cramping, insulin shock/coma, frequent urination, frequent difficulty thinking/concentrating, dizziness/loss of balance, and hyper/hypoglycemia attacks (Tr. 322). Dr.

---

[5] Throughout Dr. DeLaune's treatment notes are brief references to his ongoing treatment of Plaintiff's hypertension and hypercholesterolemia, which were unremarkable and free from complications.

Behari provided that during a typical workday, Plaintiff's symptoms would frequently be severe enough to interfere with his attention and concentration (Tr. 323). He indicated that Plaintiff would be capable of a low stress job (*id*.). Dr. Behari's assessment was that Plaintiff could not sit longer than an hour and a half before needing to get up and or stand longer than an hour and a half before needing to sit down (*id*.). He indicated that, during an eight-hour workday, Plaintiff would need to get up and walk around four times for fifteen minutes duration, and that cumulatively he could sit a total of four hours during the entire workday and stand or walk more than six hours during that day (*id*.). However, Dr. Behari stated that Plaintiff would not need to take unscheduled breaks during the workday; nor would he need a job that permitted him to shift at will from sitting to standing or walking (Tr. 323–24). Dr. Behari opined that Plaintiff's diabetic impairment would likely produce "good" and "bad" days such that he would likely be absent from work more than four days per month (Tr. 325).

On June 6, 2012, Plaintiff visited Dr. DeLaune and also requested that he complete a disability form for him (Tr. 430). In his medical notes from the visit, Dr. DeLaune reported that "[Plaintiff] states while working he hasn't [sic] a daily problem with hypoglycemic spells which cause him to have problems with focusing, difficulty concentrating, and confusion. He states in fact lost his last job because of these spells." (*id*.).[6] Dr. DeLaune also referred in his notes to Plaintiff's diabetes as "poorly controlled" and provided that "because of frequent hypoglycemic spells that occur daily [Plaintiff] is not able to obtain steady employment" (Tr. 431). Dr. DeLaune accordingly stated that he would declare Plaintiff to be disabled on the RFC assessment form (*id*.).

Dr. DeLaune provided an RFC assessment of Plaintiff (Tr. 371–72). On the assessment form, Dr. DeLaune stated: "This patient has brittle uncontrolled diabetes on continuous insulin with frequent spells of hypoglycemia with confusion and difficulty concentrating requiring immediate attention." (Tr. 372). Dr. DeLaune otherwise indicated no physical limitations for Plaintiff except to say that he should be restricted from climbing stairs and ladders (Tr. 371). Dr. DeLaune then affirmed that Plaintiff was disabled from full-time continuous employment and that his disabling condition was expected to last more than a year (Tr. 372).

---

[6] It is evident that in this instance Plaintiff was referring to his Home Depot job, the last job he had, which he lost in December of 2011.

Case No.: 3:14cv24/EMT

Subsequently, from October of 2012 to August of 2013, the record reflects a series of five visits from Plaintiff to Dr. DeLaune's office, essentially for routine follow-up management of his hypertension and hypercholesterolemia (Tr. 422–29). Dr. DeLaune also noted tobacco abuse or, more generally, a history of "noncompliance" (*id*.). Dr. DeLaune continued to describe Plaintiff's diabetes as "brittle" and "uncontrolled," and he continued to note that Plaintiff's diabetes was being "followed" by Dr. Behari.

On April 12, 2012, Plaintiff underwent a consultative exam with Michael E. Kasabian, D.O., who performed an array of range of motion exercises, all of which showed Plaintiff's range of motion to be in the normal range (Tr. 393–95). Dr. Kasabian's physical examination of Plaintiff revealed no ulcers on his feet and no other abnormalities other than a small, red lesion in the thigh area which Plaintiff said had been there for about a month (Tr. 396, 433).

On a March 18, 2013 office visit, Dr. Behari recorded the following impressions.

> [Plaintiff] is basically a Type 1 diabetic of late onset and has been managing his blood sugars with an Omni pod. He changed from a Medtronic pump to an Omni pod his request. He likes his pump but cannot afford the supplies. He lost his job and is applying for disability. He worked as a Sales Associate and a shelf-stocker at Walmart. He smokes 1 pack of cigarettes a day. His blood sugars have done better on his pump when he uses it like he should. A download from his pump is analyzed and sent for scanning to EHR. He has a lot of 200 to 300 range blood sugars that he blames on under dosing. He tends to run high mostly post supper and at night. He has had a few low blood sugar readings which he blames on Insulin calorie mismatch. His Novolog is being obtained under patient assistance from Novo Nordisk. He wants to switch back to Lantus Insulin and Novolog for cost reasons. His vision is doing fairly well and he has no neuropathic or foot problems. He does have some numbness in his feet.

(Tr. 384). As part of his assessment, Dr. Behari spoke of making adjustments to his diabetes medications, their amounts, and the dosing routines (Tr. 387).

V.   DISCUSSION

Plaintiff's lone contention is that the ALJ erred by affording "no weight" to the medical opinions of both Drs. DeLaune and Behari relative to Plaintiff's diabetes condition, and in doing so the ALJ erroneously concluded that Plaintiff was not disabled. Plaintiff argues that the ALJ failed to articulate good cause for discrediting the opinions of these doctors, both treating physicians for Plaintiff.

Case No.: 3:14cv24/EMT

Under the "treating physician rule," the ALJ must accord substantial or considerable weight to the opinion, diagnosis, and medical evidence of a treating physician absent a showing of "good cause" to the contrary. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (citation omitted). "Good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Id. at 1240–41; see also 20 C.F.R. § 416.927 ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight"). The ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. Winschel v. Comm'r of Social Sec., 631 F.3d 1176, 1178–79 (11th Cir. 2011). "Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ can place on that opinion." Harrison v. Comm'r of Soc. Sec., 569 F. App'x 874, 877 (11th Cir. 2014) (citations omitted). There is good cause to reject a treating physician's findings when his treatment notes contain unresolved inconsistencies. Edwards v. Sullivan, 937 F.2d 580, 583–84 (11th Cir. 1991). With good cause, an ALJ may disregard a treating physician's opinion but "must clearly articulate [the] reasons" for doing so. Winschel, 631 F.3d at 1178–79 (quoting Phillips, 357 F.3d at 1241).

When a treating physician's opinion does not warrant controlling weight, the ALJ still must weigh the medical opinion based on (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; 5) whether the physician specializes in the medical areas at issue; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c); see also Eyre v. Comm'r of Soc. Sec., 586 F. App'x 521, 523 (11th Cir. 2014). "The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion." D'Andrea v. Comm'r of Soc. Sec., 389 F. App'x 944, 946–47 (11th Cir. 2010) (citing Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985)). "An acceptable medical opinion as to disability must contain more than a mere conclusory statement that the claimant is disabled. It must be supported by clinical or

laboratory findings." Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981).[7]  Thus, a physician's conclusory statements are given weight only to the extent they are supported by clinical or laboratory findings or other such evidence of the claimant's impairments.  D'Andrea, 389 F. App'x at 946–47 (citing Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986)).

      The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether a claimant meets a listed impairment, a claimant's RFC (*see* 20 C.F.R. §§ 404.1545, 404.1546), or the application of vocational factors, because those ultimate determinations are the province of the Commissioner.  20 C.F.R. § 404.1527(e).

      In the instant case, the ALJ first found the disability form completed by Dr. DeLaune to merit no weight because it was incomplete, internally inconsistent, and because Dr. DeLaune was not Plaintiff's treating physician for diabetes (Tr. 22).  As for the inconsistencies, the ALJ explained:

> For instance, Dr. DeLaune opined Plaintiff has no environmental limitations; however, considering Plaintiff's reports of frequent confusion and difficulty focusing, Plaintiff should at least exercise ordinary precautions recommended for individuals with epilepsy, such as avoiding unprotected heights, open waters, and driving automotive equipment.  Moreover, Dr. DeLaune stated Plaintiff's hypoglycemic episodes were the result of medication and his records do not show that the repeated episodes of hypoglycemia could not be resolved with compliance to an appropriate medical regimen.  Records from Dr. Behari repeatedly indicate Plaintiff is not always compliant with his prescribed treatment regimen.  In addition, Dr. DeLaune's records do not contain Plaintiff's glucose level diary or other documentation of Plaintiff's glucose levels.

 (Tr. 22–23).

      The ALJ further noted that, on the date Dr. DeLaune completed the disability form, his physical examination of Plaintiff revealed "no medical signs or clinical findings of peripheral

---

[7] Decisions issued by the Unit B panel of the former Fifth Circuit are binding precedent on courts of the Eleventh Circuit.  See Stein v. Reynolds Secs., Inc., 667 F.2d 33, 34 (11th Cir. 1982).

Case No.: 3:14cv24/EMT

neuropathy or end-organ damage that could reasonably be expected to produce functional limitations that would preclude all work activity" (Tr. 23). The ALJ then remarked that Dr. DeLaune did not appear to have consulted with Dr. Behari, Plaintiff's treating physician for his diabetes, regarding Plaintiff's diabetes health when he completed the form (*id*.). Thus, the ALJ concluded that Dr. DeLaune had not specifically identified any particular functional limitations, nor had he supported his disability determination with sufficient medical signs or clinical findings (*id*.).

The ALJ then found the RFC Questionnaire form completed by Dr. Behari to merit no weight because it was "inconsistent with the longitudinal treatment record from Dr. DeLaune as well as with Dr. Behari's own findings during his March 2013 examination of [Plaintiff]" (Tr. 23). The ALJ reiterated that Plaintiff's "subjective reports of debilitating symptoms and frequent episodes of hypoglycemia" were not borne out by the medical records culled from Plaintiff's office visits with Dr. DeLaune over the years (*id*.). The ALJ also determined that Dr. Behari's opinions on the RFC form were internally inconsistent:

> For instance, Dr. Behari stated the Plaintiff does not need a job that permits shifting positions at will from sitting, standing; however, Plaintiff is required to walk for 15 minutes every hour during a normal eight-hour workday. Dr. Behari further opined Plaintiff would not need to take unscheduled breaks during a workday. Finally, there is nothing in this record other than Plaintiff's subjective reports to support Dr. Behari's opinion that Plaintiff is "likely" to be absent from work as the result of his impairments or treatment for more than four days every month.

(Tr. 23).

Moreover, the ALJ found further support for her assessment from the conservative nature of Plaintiff's treatment (*id*.), as well as from the fact that ongoing treatment notes from both Drs. Behari and DeLaune revealed no symptoms such as foot ulcers, abnormal sensory testing, confusion, visual abnormalities, vertigo, appetite changes, cold or heat intolerance, polydipsia, or polyuria (Tr. 22). While Plaintiff did present to Dr. Behari with numbness in his feet, no abnormalities were evident, and Plaintiff was always instructed to wear proper shoes to relieve symptoms (*id*.). These findings were also bolstered by the results of the consultative examination performed by Dr. Kasabian, who found Plaintiff to have no demonstrable issues with range of motion, peripheral neuropathy, or any other functional limitation (Tr. 21, 22). The ALJ also found Plaintiff's testimony that he was able

"to engage in a wide array of activities of daily living" to be "persuasive evidence that [his] alleged symptoms resulting from his impairments are not totally disabling" (Tr. 19).

The ALJ further noted that, while Plaintiff reported—and test results to some degree corroborated—that he experienced episodes of hyperglycemia, these episodes were not severe enough to cause either of Plaintiff's doctors to place any limitations on his activities (Tr. 19–20). Moreover, as Plaintiff acknowledged, these episodes tended to derive from temporary difficulties Plaintiff had in operating his insulin pump, keeping to his insulin schedule, and failing to abide by other directives in managing his diabetes such as implementing a diet and exercise plan and curtailing his use of tobacco (Tr. 19–21). Furthermore, the record shows relatively few reported episodes of pronounced hyperglycemia over a span of several years, which, considering the fact that evidence of these episodes was largely derived from Plaintiff's subjective reports, led the ALJ to disregard the findings of Drs. DeLaune and Behari that the episodes would be frequent enough to cause Plaintiff to miss three or four days of work per month (Tr. 21–22).

Accordingly, this court finds that the ALJ's decision demonstrated good cause to attach no weight to the opinions on disability provided by Drs. Behari and DeLaune as treating physicians. The ALJ adequately showed that the physicians' opinions were not bolstered by the medical evidence and that in fact their conclusions were demonstrably inconsistent with the bulk of the evidence in the case, including their own medical impressions over time. Their medical conclusions did not address, much less resolve those inconsistencies, and as such were more conclusory than explanatory in nature. The ALJ's decision to disregard those opinions was well articulated, and her ultimate decision on disability, which is reserved for the ALJ alone, was based on substantial evidence.

VI. CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at 1560. Moreover, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making her findings, or that any other ground for reversal exists.

Case No.: 3:14cv24/EMT

Accordingly, it is **ORDERED**

The decision of the Commissioner is **AFFIRMED**, and this action is **DISMISSED.**  The clerk is directed to close the file.

At Pensacola, Florida this 30th day of March 2015.


                              /s/ *Elizabeth M. Timothy*
                              **ELIZABETH M. TIMOTHY**
                              **CHIEF UNITED STATES MAGISTRATE JUDGE**